IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RODRIGO ALMANZA,<br>    *Plaintiff*, | § | |
| | § | |
| | § | |
| v. | § | Civil Action No.1:21-cv-48 |
| | § | |
| ERIC GARZA and ROBERT GRACIA | § | |
|     *Defendants*. | § | JURY DEMANDED |

---

PLAINTIFFS' ORIGINAL COMPLAINT

---

Plaintiff, RODRIGO ALMANZA, brings this action against Defendants, Cameron County Sheriff ERIC GARZA and Executive Chief Deputy ROBERT GRACIA, in their individual and official capacities, pursuant to 42 U.S.C. § 1983, for violating his constitutional right to free speech, and would show this Court as follows:

INTRODUCTION

1.     Plaintiff, RODRIGO ALMANZA, is a sergeant with the Cameron County Sheriff's Office ("CCSO") and brings this civil rights action to redress the deprivation, under color of state law, of rights, privileges and immunities secured by the First Amendment to the United States Constitution.  This claim arises from the concerted action of Defendants, Cameron County Sheriff Eric Garza ("Sheriff Garza") and Executive Chief Deputy Robert Gracia ("Chief Deputy Gracia") to retaliate against Sgt. Almanza for supporting Eric Garza's opponent, Omar Lucio, in the recent election for Sheriff of Cameron County, Texas by:

   a. transferring him to the Transport Division from the prestigious Criminal Investigations Division, where he handled major crimes and also served as liaison to the CCSO's counterpart in the Republic of Mexico;

   b. stripping him of all subordinates and supervisory duties;

    c.   assigning him to shift schedules and working conditions not given to other CCSO supervisors;

    d.   having him report to a person not certified as a peace officer; and

    e.   requiring him to perform menial and pointless tasks like distributing inmate meal carts and physically manning a perfectly operational gate.

2.     In this action, Sgt. Almanza seeks compensatory and punitive damages, attorney fees, declaratory relief, and injunctive relief that requires Sheriff Garza and Chief Deputy Gracia to assign Sgt. Almanza to a position that exercises supervisory authority, with all of the customary benefits and privileges customarily granted to supervisors of the CCSO, and prohibiting them from subsequently reassigning him from there based on his protected activity of supporting Omar Lucio's political campaign.

## PARTIES

3.     Plaintiff, RODRIGO ALMANZA, is an individual citizen and resident of Cameron County, Texas.  Plaintiff is a sergeant with the Cameron County Sherriff's Office.

4.     Defendant, ERIC GARZA, is a resident of Cameron County, Texas.  Mr. Garza may be served at his place of business, 7300 Old Alice Road, Olmito, Texas 78575.  Mr. Garza was, at all relevant times, the Sheriff of Cameron County, Texas and is sued herein in both his individual and official capacities.

5.     Defendant, ROBERT GRACIA, is, on information and belief, a resident of Cameron County, Texas.  Mr. Gracia may be served at his place of business, 7300 Old Alice Road, Olmito, Texas 78575.  Mr. Gracia was, at all relevant times and with the permission of Mr. Garza, holding himself out as the Executive Chief Deputy Sheriff of Cameron County, Texas. Mr. Gracia is sued herein in his individual and official capacities.

JURISDICTION AND VENUE

6.      Pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), this Court has jurisdiction over this matter.   Pursuant to 28 U.S.C. 1391(b)(2), this matter is brought in the proper venue.

STATEMENT OF FACTS

7.      Sergeant Almanza has been with the Cameron County Sheriff's Office for eight (8) years. On or about December 2019, Sgt. Almanza obtained the rank of sergeant.  In May of 2015, under the administration of former Sheriff Omar Lucio, Sgt. Almanza was assigned to the Criminal Investigations Division ("CID") and held the position of Criminal Investigator.  With this assignment, Sgt. Almanza's duties included: responding to emergencies; analyzing crime scenes for evidence; collecting evidence; obtaining warrants for arrest; arresting suspects; interviewing witnesses; testifying in court; and writing case reports.  As a CCSO supervisor in CID, Sgt. Almanza supervised approximately six (6) subordinates.

8.      An assignment to CID is considered prestigious because deputies assigned to the division work in civilian clothes, have an office, are assigned a preferred work schedule of 8:00 am to 5:00 pm with weekends off, are assigned late-model fleet units, and due to the nature of the work, have access to professional advancement and accolades.  Sgt. Almanza's duties also included the very prestigious assignment of being the liaison to the CCSO's counterpart in the Republic of Mexico, responsible for coordinating the Sheriff's Office's operational needs with its Mexican counterparts.

9.      On or about October 2, 2020, Eric Garza announced his candidacy for Cameron County Sheriff, in opposition to former Sheriff Lucio.  Sgt. Almanza was a public and vocal supporter of former Sheriff Lucio.  Specifically, Sgt. Almanza, on his time off, participated on Sheriff Lucio's campaign by block walking, assisting at political events, and posting supportive messages on social media.

10.    On or about November 3, 2020, former Sheriff Lucio lost his election to Sheriff Garza. Robert Gracia was a well-publicized financial supporter of Sheriff's Garza's campaign. Shortly after Sheriff Garza won the election, he named Robert Gracia as his Chief Deputy, despite the fact that Robert Gracia was not a peace officer certified by the Texas Commission on Law Enforcement.

11.    On or about December 30, 2020, Chief Deputy Robert Gracia issued a memorandum ordering all deputies of a certain shift, and those not scheduled to work on January 1, 2021, to attend swearing in ceremonies at particular times and to fill out employment packets for continued employment with the CCSO.

12.    On January 1, 2021, Chief Deputy Gracia began issuing orders to Sgt. Almanza regarding active CID cases he was working on. Chief Deputy Gracia issued these orders without being a certified peace officer. Sgt. Almanza bristled at these orders and took them as Chief Deputy Gracia attempting to interfere in his investigations.

13.    On or about January 4, 2021, Chief Deputy promoted Joe Elizardi to the position of Jail Administrator. That same day, Sgt. Almanza was reassigned to the Jail Division's Transport Division. An assignment to the Jail Division's Transport Division is considered to be far less prestigious than an assignment to the Criminal Investigations Division because the Transport Division offers far less opportunities for career advancement and professional accolades. Sgt. Almanza's current duties include, among others, the "distribution of inmate meal carts to their assigned area[s]."

14.    Normally, supervisors of Transport Division:

    a.    work a preferred 7:00 am to 3:00 pm shift schedule with weekends off;

    b.    are granted the authority to set the schedules for subordinates assigned to the division; and

c.  are granted the authority to carry cellphones into the jail.

However, Sgt. Almanza is assigned to work the "graveyard" shift, 11:00 pm to 7:00 am, a memorandum was promulgated ordering deputies and jailers assigned the Transport Division to report to a sergeant in the Jail Division (who is not a certified peace officer) for scheduling, and Sgt. Almanza alone has not been able to take his cellphone into the jail.  Sgt. Almanza currently supervises no one and he, himself, has been ordered to report to a jailer, a subordinate.

15.     All supervisors in the Sheriff's Office are assigned fleet units that are model year 2019 or newer.  However, Sgt. Almanza has been issued a 2015 unit, with 170,000 miles and in terrible condition.

16.     On February 12, 2021, was ordered to serve a citizen with a Mental Health Warrant for Emergency Detention.  Due to their nature and subject matter, these types of mental health warrants are normally served by deputies assigned to the Civil Process Division and are specially trained to serve them.  When ordered to serve the mental health warrant, Sgt. Almanza had no training or experience in serving a mental health warrant.

17.     Sgt. Almanza obeyed the order, served the mental health warrant, and transported the detained person to a treatment facility.  In his eight (8) years with the Sheriff's Office, Sgt. Almanza had never heard of a criminal investigator or patrol sergeant serving a mental health warrant.  When Sgt. Almanza was ordered to serve the mental health warrant, the Sheriff's Office had a supervisory vacancy because at that time, the patrol deputies were being supervised by a rookie deputy.

18.     On February 18, 2021, at approximately 4:15 pm, Sgt. Almanza was ordered to position himself at the Sheriff's Office's main gate and personally man it.  Customarily, a deputy is assigned to physically man the main gate only when it is out of service.  A deputy assigned to man the main gate is there to radio to the jail's master control the identities of people entering the

facility.  When Sgt. Almanza was ordered to man the main gate, he was not issued a radio to communicate with the master control.  After approximately two (2) hours, Sgt. Almanza relayed to his supervisor that he had counted eighty (80) vehicle pass through the gate without it showing any signs of malfunctioning.  Despite seeing no signs of malfunctioning, Sgt. Almanza was ordered to man the main gate until his shift ended at 11:00 pm.  On that night, Cameron County was struck by a lethal winter freeze.

19.     By February 26, 2021, Sgt. Almanza could no longer take the stress and humiliation directed at him by Sheriff Garza and Chief Deputy Gracia and had to seek medical help.  Sgt. Almanza sought and was placed on leave until March 24, 2021.

20.     On March 22, 2021, Lt. Carlos Del Bosque when to Sgt. Almanza's home and relieved him of his duty-issued Glock side arm "because Chief Deputy Gracia wanted it."

21.     The dramatic shift assignment from CID to the Jail Division and the total loss of professional responsibilities, when combined with the supervisory vacancies in the patrol division, has caused Sgt. Almanza to believe that his reassignment was not done to meet the operations needs of the Sheriff's Office, but rather to professionally humiliate him to the point that he would resign.  Sgt. Almanza's belief is reinforced by the fact that Chief Deputy Gracia told Primera Police Department Chief Deputy, Manny Trevino that he was going to "make [Sgt. Almanza] quit."

## CAUSES OF ACTION

COUNT 1:     FIRST AMENDMENT VIOLATION – RETALIATION FOR POLITICAL SPEECH

22.     Sgt. Almanza alleges and incorporates the section titled, "Statement of Facts", above, as if fully set forth herein.

23.     Sgt. Almanza engaged in protected activity by publicly and vocally supporting of former Sheriff Lucio in his November 2020 campaign for Cameron County Sheriff.  Sgt. Almanza

suffered an adverse employment action by being reassigned from the prestigious Criminal Investigations Division to the far-less prestigious Transport Division. The close timing between Sgt. Almanza's support for former Sheriff Lucio and Sgt. Almanza's reassignment demonstrates a causal connection between the two.

24.    Sheriff Garza and Chief Deputy Gracia's conduct caused harm to Sgt. Almanza. As a direct and proximate result of his reassignment, Sgt. Almanza has suffered damages in the form of:

    a. lost wages and benefits;

    b. loss of reputation;

    c. loss of a preferred shift schedule and other desired working conditions;

    d. loss of the ability to exercise supervisory authority; and

    e. the attendant infliction of mental and physical pain, suffering, anguish, humiliation, and distress in connection with be reassigned to the Transport Division.

25.    Sheriff Garza and Chief Deputy Gracia acted under color of law.

26.    Sheriff Garza and Chief Deputy Gracia are final policymakers and, therefore, the Sheriff's Office officially adopted and promulgated the decisions to inflict the aforementioned adverse employment actions.

27.    In order to assert a valid claim against an official in his individual capacity, a § 1983 claimant must establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation. *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012). The doctrine of qualified immunity limits a public official's § 1983 civil liability for the performance of discretionary functions. *Moreno v. Texas A&M Univ-Kingsville*, 2006 WL 3030713 at 1 (SDTX 2006). Officials are protected from liability for civil damages so long as their conduct has not

violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* Since 1992, it has been clearly established law that a lateral transfers from the law enforcement section to the jail section constitute an "adverse employment action." *See Click v. Copeland*, 970 F.2d 106, 110 (5th Cir. 1992); *see also Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996); *See Porter v. Valdez*, 424 Fed.Appx. 382 (5th Cir. 2011). Sheriff Garza and Chief Deputy Gracia's decision to reassign Sgt. Almanza to the Transport Division is unreasonable in-light of clearly established law because they:

   a. transferred a uniquely qualified, veteran supervisor, Sgt. Almanza, from the prestigious Criminal Investigations Division, where he handled major crimes and also served as liaison to the CCSO's counterpart in the Republic of Mexico, to a position normally set aside for those with less experience, the Transport Division;

   b. stripped him of all subordinates and supervisory duties;

   c. assigned him to shift schedules and working conditions not given to other CCSO supervisors;

   d. have him report to a person not certified as a peace officer; and

   e. require him to perform menial and pointless tasks like distributing inmate meal carts and physically manning a perfectly operational gate.

Therefore, Sheriff Garza and Chief Deputy Gracia are not entitled to qualified immunity against Sgt. Almanza's claim against them in their individual capacity.

28.    Therefore, Sheriff Garza and Chief Deputy Gracia are liable to plaintiff, pursuant to First Amendment and 42 U.S.C. § 1983.

COUNT 2:    DECLARATORY RELIEF.

29.    Pursuant to 28 U.S.C. §§ 2201 -2202, Sgt. Almanza seek declaratory judgment stating that Sheriff Garza and Chief Deputy Gracia violated his right to freedom of expression, guaranteed by the First Amendment to the United States Constitution, as described above.

Pursuant to Federal Rule of Civil Procedure 57, Sgt. Almanza elects to have this claim tried before a jury.

COUNT 3:　INJUNCTIVE RELIEF.

30.　Sgt. Almanza requests that the Court grant a permanent injunction against Sheriff Garza and Chief Deputy Gracia, requiring them to assign Sgt. Almanza to a position with supervisory authority, with all customary benefits and privileges granted to supervisors of the Sheriff's Office, and prohibiting them from subsequently reassigning him from there based on his protected activity of supporting former Sheriff Lucio's political campaign.

COMPENSATORY DAMAGES

31.　As a direct and proximate result of defendants' violations of Sgt. Almanza's constitutional rights, he suffered the following injuries and damages:

   a.　Compensatory damages;

   b.　The wages, salary, profits, and earning capacity that plaintiffs lost and the present value of the wages, salary, profits, and earning capacity that Sgt. Almanza is reasonably certain to lose in the future because of defendants' actions;

   c.　The mental/emotional pain and suffering that Sgt. Almanza has experienced and is reasonably certain to experience in the future; and

   d.　Nominal damages.

PUNITIVE DAMAGES

32.　The acts of Sheriff Garza and Chief Deputy Gracia, as described herein, were motivated by an evil motive and intent, to retaliate against Sgt. Almanza for him engaging in a protected activity, and involved a reckless and callous indifference to the federally his protected rights. Therefore, Sgt. Almanza seeks punitive damages.

<u>ATTORNEY FEES</u>

33.    Pursuant to 42 U.S.C. § 1988, Sgt. Almanza is entitled to an award to attorney's fees and costs

<u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiff, RODRIGO ALMANZA, prays that Defendants, Cameron County Sheriff ERIC GARZA and Executive Chief Deputy ROBERT GRACIA be cited to appear, and after trial on the merits:

- judgment is issued declaring that Sheriff Garza and Chief Deputy Gracia unlawfully deprived Sgt. Almanza of his right to free speech guaranteed by the First Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983;

- Sheriff Garza and Chief Deputy Gracia are ordered to assign Sgt. Almanza to a position that exercises supervisory authority, with all of the customary benefits and privileges granted to supervisors of the Sheriff's Office, and prohibiting them from subsequently reassigning him from there based on his protected activity of supporting former Sheriff Lucio's political campaign;

- Sgt. Almanza recover:

  o  compensatory damages;

  o  punitive damages;

  o  all reasonable and necessary attorney's fees, court costs and expenses in regards to the present suit in litigation; and

any and all other general relief or specific relief to which he proves himself entitled.

Respectfully submitted,

By: /s/ David Willis
David Willis
State Bar No. 24039455
Federal ID. 36365
Email: dwillis@davidwillispc.com
1534 E. 6th Street, Suite 201
Brownsville, Texas 78520
Ph:    956-986-2525
Fax:    956-986-2528

OF COUNSEL
David Willis, P.C.

ATTORNEY IN CHARGE FOR
Plaintiff, RODRIGO ALMANZA.